IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 3:19-CR-151-TAV-DCP-7 |
| ) | |
| MAHLON T. PRATER, JR., ) | |
| ) | |
| Defendant., ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate.

Now before the Court is Defendant's Motion to Dismiss Superseding Indictment [Doc. 193], filed on September 18, 2020, to which the Government filed a Response [Doc. 231 at 46–54] on October 2, 2020.

The Court held a motion hearing on December 2, 2020. [Doc. 307]. Assistant United States Attorney David Lewen appeared on behalf of the Government, while Attorney Gerald Gulley, Jr., appeared on behalf of Defendant, who was also present. Accordingly, for the reasons detailed below, after reviewing the parties' briefs and the relevant legal authorities, the Court recommends that Defendant's Motion to Dismiss Superseding Indictment [Doc. 193] be denied.

**I.   BACKGROUND AND POSITIONS OF THE PARTIES**

In a separate case, No. 3:19-cr-152, Defendant was the sole defendant and indicted on September 4, 2019 on a single count of conspiracy to distribute and possess with intent to distribute cocaine base, a Schedule II controlled substance, as early as in or around December of 2018 continuing through April of 2019 in the Eastern District of Tennessee and elsewhere, in violation

of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A). *See United States v. Mahlon T. Prater*, No. 3:19-cr-152-TAV-DCP (E.D. Tenn. Sept. 4, 2019) [Doc. 1]. A plea agreement was filed on this count on October 16, 2019, which states that "[o]n at least 6 separate occasions within the charged conspiracy dates, the defendant sold crack cocaine to a confidential source" and "[d]uring the charged conspiracy period the defendant sold or conspired to sell approximately 30 grams of crack cocaine." [Doc. 15 in 3:19-cr-152]. Defendant entered his guilty plea on November 22, 2019 [Doc. 23 in 3:19-cr-152], which was ultimately accepted on December 17, 2019 [Doc. 27 in 3:19-cr-152].

Also on September 4, 2019, the grand jury returned an Indictment [Doc. 3] in the present case (no. 3:19-cr-151) against Defendants Alim Turner, Ushery Stewart, Ronald Turner, Kedaris Gilmore, Christopher Hounschell, and Michael Stewart, charging these defendants with conspiring to knowingly and intentionally distribute, and possess with intent to distribute, fifty (50) grams or more of methamphetamine, in violation of 18 USC §§ 846, 841(a)(1) and 841(b)(1)(A).

Defendant was subsequently indicted in the Superseding Indictment in the present case [Doc. 78] on March 3, 2020 and charged with:

> Count One: Conspiracy to possess and distribute Schedule I, II, III, and IV controlled substances, including 50 grams or more of methamphetamine; a quantity of fentanyl; a quantity of oxycodone; a quantity of alprazolam; a quantity of marijuana; a quantity of buprenorphine; and, a quantity of heroin, [from on or about July 15, 2018, through on or about November 22, 2019, in the Eastern District of Tennessee and elsewhere], in violation of 21 U.S.C. § 846;
>
> Count Two: Possession of a firearm in furtherance of drug trafficking [between the dates of on or about July 15, 2018, and continuing thereafter until or on about September 6, 2019 in the Eastern District of Tennessee], in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (2);
>
> Count Four: Aiding and abetting to possess with intent to distribute 50 grams or more of methamphetamine [on or about July 15, 2019 in the Eastern District of Tennessee], in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846, and 18 U.S.C. § 2:

> Count Six: Knowingly and intentionally distributing 50 grams or more of methamphetamine, a Schedule II controlled substance, [in or around the end of July 2019, in the Eastern District of Tennessee], in violation of 21 U.S.C. § 841 (a)(1) and 841 (b)(1 )(A); and
>
> Count Seven: Knowingly and unlawfully possessing a firearm in furtherance of drug trafficking, [in or around the end of July 2019, in the Eastern District of Tennessee], in violation of 18 U.S.C. § 924(c)(1)(A)(i).

A Second Superseding Indictment [Doc. 243] was subsequently returned on October 8, 2020 with the same charges against Defendant.[1]

### A.  Double Jeopardy

Defendant asserts [Doc. 193] that the two charged conspiracies (Count One in 3:19-cr-152 and Count One in 3:19-cr-151)[2] are a part of the same conspiracy and the Fifth Amendment precludes his conviction on Count One of the Indictment in the present case after his guilty plea in case no. 152.  Defendant claims that applying the appropriate "totality of the circumstances" analysis, including the factors set forth in *United States v. Sinito*, 723 F.2d 1250 (6th Cir. 1983), provides that the two conspiracies are the same and the overall conspiracy is one large scheme. [Doc. 194 at 3].  Accordingly, Defendant asserts that the Fifth Amendment precludes the prosecution of Count One in case no. 151, and thus "that charge must be dismissed . . . as well as the charged overt acts in Count Four and Count Six that relate to the drug conspiracy charged in Count One."  [*Id.* at 8].

Defendant maintains that a portion of the Rule 16 discovery provided to him in case no. 152 on February 2, 2020 "contained Fifteen-Day Reports to the Court, a Periodic Report to the

---

[1] Therefore, the Court will refer to the Superseding Indictment [Doc. 78] as discussed in the parties' briefing.

[2] The Court will herein refer to case no. 3:19-cr-151 as "case no. 151" and case no. 3:19-cr-152 as "case no. 152."

3

Court, and Applications for Search Warrants" which provided information on Defendant "discussing the sale of an illegal drug with an unknown individual; and information about Alim Turner, Ushery Stewart, Christopher Hounschell, Kedaris Gilmore, and Jyshon Forbes involved in the sale or purchase of methamphetamine and/or marijuana, as well as information about the use of firearm by Alim Turner that was associated with drugs trafficking, and the possession of a firearm by Ushery Stewart that presumably associated with drug trafficking." [*Id.* at 2]; *see* [Doc. 194-1]. These individuals are all codefendants in the present case, while Defendant is the sole individual charged in case no. 3:19-cr-152.

The Government responds [Doc. 231 at 46–54] that the Indictments do not violate the double jeopardy clause of the Fifth Amendment. The Government reviews the same factors addressed by Defendant in *Sinito* and maintains that the two conspiracies do not arise from a single agreement. With respect to the provided discovery allegedly for case no. 152, the Government asserts [*Id.* at 46] that it contacted defense counsel on January 21, 2020 and informed him that the Government sought to seek a Superseding Indictment in case no. 151, which would include Defendant, charging him with multiple offenses. The Government then provided Defendant with the supplemental discovery for all defendants in case no. 151 "as a professional courtesy," although the discovery letter listed case no. 152 in the heading because it was "the only case pending before the Court in which Defendant Prater was a named Defendant." [*Id.* at 47]. As detailed above, Defendant was subsequently charged in the Superseding Indictment [Doc. 78] in the present case on March 3, 2020.

### B. Multiplicity

Defendant also alleges that he may not be convicted of both Count Two and Count Seven of the Superseding Indictment in case no. 151, as "the facts underlying the two separate counts

4

appear to constitute a single unit of prosecution" and thus "violates the Fifth Amendment proscription against multiplicitous indictments." [Doc. 194 at 8]. Defendant details that Count Two charges him with possessing a firearm in furtherance of the drug conspiracy charged in Count One, while Count Seven charges him with possessing a firearm in furtherance of the distribution of methamphetamine as charged in Count Six. Therefore, Defendant asserts these charges "involve the same time frame and—given that the alleged distribution of methamphetamine appears to constitute an overt act in furtherance of the conspiracy charged in Count One—thus reflect the same conduct." [*Id.*].

The Government responds [Doc. 231 at 53–54] that "the Superseding Indictment's two § 924(c) charges against Defendant Prater are grounded in separate predicate acts," as Count Two "is predicated on the drug trafficking conspiracy in Count One," while Count Seven "is predicated on the separate, substantive drug distribution crime in Count Six." [*Id.* at 53].

## II.    ANALYSIS

### A.    Double Jeopardy

The Fifth Amendment prevents persons "subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. "That clause protects criminal defendants from prosecution following conviction or acquittal for the same offense, and also prohibits infliction of 'multiple punishments for the same offense imposed in a single proceeding.'" *Jones v. Harry*, 405 F. App'x 23, 28 (6th Cir. 2010) (quoting *Jones v. Thomas*, 491 U.S. 376, 381 (1989)). "Determining whether two drug conspiracies charged in an indictment violate the double jeopardy clause requires examining the 'totality of the circumstances' by applying '*Sinito*'s five-factor test.'" *United States v. Frazier*, No. 3:17-CR-130, 2019 WL 4242412, at *11 (M.D. Tenn. Sept. 6, 2019) (quoting *United States v. Wheeler*, 535 F.3d 446, 456 (6th Cir. 2008)).

5

The *Sinito* factors consider "(1) time; (2) persons acting as co-conspirators; (3) the statutory offenses charged in the indictments; (4) the overt acts charged by the government or any other description of the offenses charged which indicates the nature and scope of the activity which the government sought to punish in each case; and (5) places where the events alleged as part of the conspiracy took place." *United States v. Sinito*, 723 F.2d 1250, 1256 (6th Cir. 1983); *accord United States v. Meda*, 812 F.3d 502 (6th Cir. 2015). "These factors assist in answering the ultimate question: 'whether the evidence shows one agreement or more than one agreement.'" *United States v. Kennedy*, 743 F. App'x 649, 653 (6th Cir. 2018) (quoting, *In re Grand Jury Proceedings*, 797 F.2d 1377, 1380 (6th Cir. 1986)). "Where several of these factors differ between the conspiracies, the conclusion follows that the alleged illegal conspiracies are separate and distinct offenses." *Sinito*, 723 F.2d at 1256. Ultimately, after a review of the relevant factors set forth in *Sinito*, the Court finds that no double jeopardy bar exists between Count One in case no. 151 and Count One in case no. 151.

### 1. Time

First, the parties agree that the conspiracy charged in case no. 152 is alleged to have occurred from December 2018 through in or around of April 2019 [Doc. 1 in 3:19-cr-152], while the drug conspiracy in the present case, no. 151, is alleged to have occurred from on or about July 15, 2018 through on or about November 22, 2019 [Doc. 78]. While Defendant correctly states that the conspiracies overlapped in time, the charged conspiracy in the present case involved a more extensive period of time—approximately sixteen months versus approximately four months. *See, e.g.*, *United States v. Frazier*, No. 3:17-CR-130, 2019 WL 4242412, at *12 (M.D. Tenn. Sept. 6, 2019) ("The time frame is entirely different. Count Two alleges a three-year drug conspiracy lasting from March 2015 to the return of the Third Superseding Indictment on June 28, 2018. Count

6

Twenty-Eight alleges a 16-day conspiracy that began on January 1, 2016 and ended on January 16, 2018.").

While the length of the conspiracy in case no. 152 was lengthier than the example in *Frazier*, the Sixth Circuit has found that although a subsequent indictment "overlaps and subsumes the time period in the initial indictment . . . this is not conclusive evidence of a single conspiracy." *United States v. Lacey*, 983 F.2d 1070 (Table), 1993 WL 1292 at *7 (6th Cir. 1993). Therefore, the Court finds that this factor weighs against Defendant, as the conspiracies involve different lengths and intervals of time

### 2. Persons Acting as Co-Conspirators

Ultimately, *Sinito* "hold[s] that two distinct conspiracies can be found 'even though they may involve some of the same participants.'" *United States v. Goff*, 400 F. App'x 1, 9 (6th Cir. 2010) (quoting *Sinito*, 723 F.2d at 1257). However, in the present case, the participants in the two conspiracies at issue are completely different. Defendant points to the discovery letter provided by the Government in case no. 152 including Fifteen-Day Reports, Periodic Court Reports, and search warrant information about Codefendants (in case no. 151) Alim Turner, Ushery Stewart, Kedaris Gilmore, and Jyshon Forbes. The Government, however, explained that it informed defense counsel that Defendant would be included in the upcoming Superseding Indictment in case no. 151, and sent the initial discovery as a professional courtesy. While the heading of the discovery letter lists case no. 152, it is clear to the Court that the provided discovery refers to case no. 151. Defendant fails to point to any additional evidence supporting his claim that the two charged conspiracies involve the same co-conspirators.

Defendant is the only individual named in the Indictment in case no. 152, while the Superseding Indictment (and Second Superseding Indictment) in the present case includes twelve

7

individuals as Codefendants—including Codefendants Alim Turner, Ushery Stewart, Kedaris Gilmore, and Jyshon Forbes. *See, e.g.*, *United States v. Goff*, 187 F. App'x 486, 492 (6th Cir. 2006) ("As to the second factor, there is no overlap whatsoever between the three coconspirators alleged in *Avila* and the nine alleged here[.]"); *United States v. Toaz*, 59 F. App'x 94, 101 (6th Cir. 2003) ("Toaz is the only conspirator that is mentioned in both indictments. Given the extent of the conspiracies alleged, the overlap of a single defendant does not indicate a single conspiracy."). Moreover, Defendant's plea agreement in case no. 152 lists only that Defendant "worked with others to sell crack cocaine," as "[o]n at least 6 separate occasions within the charged conspiracy dates, the defendant sold crack cocaine to a confidential source," and "[o]n one additional occasion, the defendant arranged the transaction over the telephone." [Doc. 15 in 3:19-cr-152]. The charged conspiracy in the present case, which the Court will subsequently discuss in greater detail, involved a significant increase in both named and unnamed co-conspirators. Therefore, the Court finds that this factor also weighs against Defendant's argument.

### 3. Statutory Offenses Charged

Here, the Court first notes that the statutory offenses are the same, as Defendant is charged with violations of 21 U.S.C. § 846 in both indictments at issue. However, "even if 'the statutory offenses charged are the same, . . . in context with the other factors, this is a minor point, since one can certainly enter two conspiracies to commit the same type of crime.'" *United States v. Wheeler*, 535 F.3d 446, 456 (6th Cir. 2008) (quoting *United States v. Ledon*, 49 F.3d 457, 460 (8th Cir. 1995)). The Court notes that Defendant is charged in Count One in case no. 152 with conspiracy to distribute and possess with intent to distribute cocaine base; whereas he is charged in Count One in case no. 151 with conspiracy to possess and distribute 50 grams or more of methamphetamine, as well as a quantity of oxycodone, alprazolam, marijuana, buprenorphine, and heroin. *See United*

8

*States v. Darden*, 353 F. Supp. 3d 697, 712–13 (M.D. Tenn. 2018) ("This is particularly true since the Kentucky indictment was limited to crack cocaine while the allegations here include a cornucopia of drugs."). Therefore, the Court finds that this factor weighs both for and against a double jeopardy bar. *See United States v. Kitchen*, 428 F. App'x 593, 596 (6th Cir. 2011) (finding no double jeopardy bar where "the two conspiracies involved different (although overlapping) time periods, different (although perhaps overlapping) locations, and different types of drugs").

### 4. Overt Acts Charged and the Nature and Scope of the Activity which the Government Sought to Punish

Defendant states that there were no overt acts charged in case no. 152, although he details the references in the plea agreement to the six occasions where he sold crack cocaine to a confidential source, and the one occasion where he arranged a transaction over the telephone. With respect to case no. 151, Defendant claims that there were no overt acts identified in Count One of the Superseding Indictment, but notes that he was also charged with attempting to illegally possess with intent to distribute fifty grams or more of methamphetamine (Count Four), as well as illegally distributing fifty grams or more of methamphetamine (Count Six). *See* [Doc. 78].

The Government claims that the conspiracy in case no. 152 "involved Defendant Prater working with a limited number of lower-level east Knoxville crack dealers, with Defendant Prater in turn selling small amounts of crack to an FBI confidential informant." [Doc. 231 at 51]. Conversely, the Government asserts that the "large scale conspiracy charged in case [no.] 151 includes different drugs in far larger quantities, sourced from Nashville and California via a Mexican drug distributor housed in a middle Tennessee prison with Defendant Ronald Turner, and which were subsequently distributed in several locations, including, Knoxville, Lenoir City, Cleveland, and Chattanooga, Tennessee." [*Id.*].

9

Ultimately, the two charged conspiracies at issue were vastly different in size and scope. *See United States v. Goff*, 187 F. App'x 486, 492 (6th Cir. 2006) ("As to the fourth factor, the instant indictment and the *Avila* indictment seek to punish conduct that is generally of the same nature but is not nearly of the same scope, particularly as to Goff's alleged concrete action in furtherance of the conspiracies."). As the Court detailed above, the charged conspiracy in case no. 152 involved the distribution of a small amount of crack cocaine; whereas as Count One in case no. 151 involved fifty grams or more in methamphetamine, as well as several additional controlled substances. Moreover, the Government detailed how the large-scale conspiracy in the present case included several co-conspirators and large amounts of methamphetamine—obtained from various Mexican sources of supply and subsequently distributed throughout the state—as established through the plea agreements of Codefendants Kiante Cooper, Christopher Hounschell, and Seth Curtis. *See* [Docs. 115, 128, 135].

The Court finds that the facts of the present case are analogous to *United States v. Darden*, where the Eastern District of Kentucky found that "the nature and scope of the activity that the Government seeks to punish [in two drug conspiracies] is different." 353 F. Supp. 3d at 713. Similar to Defendant in case no. 151, the indictment in *Darden* targeted drug trafficking activities of a gang, and the Government represented that the defendant "was involved in obtaining kilogram quantities of powder cocaine from his source in Atlanta, and cooking, packaging, and distributing controlled substance in Clarksville." *Id.* However, in the defendant's previous federal conviction, the defendant "pled guilty to conspiring to distribute more than fifty grams of crack cocaine base because he facilitated a single sale of 141.5 grams of crack cocaine to an informant in that case." *Id.*

10

Therefore, similar to *Darden*, the Court finds that the nature and scope of the activity which the Government sought to punish are vastly different due to the difference in the nature and scope of the two conspiracies. *See, e.g.*, *United States v. Frazier*, No. 3:17-CR-130, 2019 WL 4242412, at *12 (M.D. Tenn. Sept. 6, 2019) ("Count Two involves a wide-ranging conspiracy to distribute methamphetamine involving more than a dozen named individuals that lasted more than three years. In contrast, Count Twenty-Eight was a small conspiracy to distribute oxymorphone by a trio of named individuals over a course of little more than two weeks.").

### 5. Places Where the Events Took Place

While both indictments assert that the drug conspiracies were alleged to have occurred in the Eastern District of Tennessee, the Government has alleged, as discussed above, that the drug conspiracy in the present case involved a much larger geographic scale. *See, e.g.*, *id.* at *12–13 (holding "[i]f established at trial, this evidence indicates that the places where the events took place was different," where the Government alleged that the "large-scale methamphetamine trafficking conspiracy . . . had far-reaching consequences outside the State of Tennessee . . . and it involved a single, continuous and reliable source of supply, located in California," whereas the other pill conspiracy "was limited in scope to Tennessee").

Ultimately, weighing the totality of the circumstances in light of the five *Sinito* factors, the Court finds that the Government's proffered evidence preponderates in favor of the existence of two conspiracies. The record before the Court indicates that Count One in case no. 151 and Count Two in case no. 152 involved different agreements, parties, time periods, conduct, and controlled substances, and as such they did not constitute a "single agreement to commit several crimes," but rather "multiple agreements to commit separate crimes." *United States v. Broce*, 488 U.S. 563, 570–71 (1989); *see, e.g.*, *United States v. Goff*, 187 F. App'x 486, 493 (6th Cir. 2006) ("In sum, at

11

Case 3:19-cr-00151-TAV-DCP   Document 322   Filed 12/21/20   Page 11 of 16
PageID #: 2615

least three of the five factors militate against finding the *Avila* conspiracy to be the same as the conspiracy charged here."). Therefore, the Court finds that the two drug conspiracies are separate and distinct offenses and not barred by the double jeopardy clause. *See United States v. Sinito*, 723 F.2d 1250, 1256–57 (6th Cir. 1983) ("Where several of these factors differ between the conspiracies, the conclusion follows that the alleged illegal conspiracies are separate and distinct offenses.").

### B. Multiplicity

Defendant also claims that the Superseding Indictment [Doc. 78] is multiplicitous and asserts that he may not be convicted of Count Two and Count Seven. As the Court previously detailed, these counts include:

> Count Two: Possession of a firearm in furtherance of drug trafficking [between the dates of on or about July 15, 2018, and continuing thereafter until or on about September 6, 2019 in the Eastern District of Tennessee], in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (2);
>
> Count Seven: Knowingly and unlawfully possessing a firearm in furtherance of drug trafficking, [in or around the end of July 2019, in the Eastern District of Tennessee], in violation of 18 U.S.C. § 924(c)(1)(A)(i).

[*Id.*]. Defendant maintains that "in reality these differing Counts involve the same time frame and—given that the alleged distribution of methamphetamine appears to constitute an overt act in furtherance of the conspiracy charged in Count One—thus reflect the same conduct." [Doc. 194 at 8].

The Government responds that the two separate § 924 (c) charges "are grounded in separate predicate acts: Count Two, which alleges that the named defendants aided and abetted each other in the possession of firearms in furtherance of a specified drug trafficking crime, is predicated on the drug trafficking conspiracy in Count One; Count Seven, which alleges that Defendant Prater

12

possessed a firearm in furtherance of a specified drug trafficking crime, is predicated on the separate, substantive drug distribution crime in Count Six." [Doc. 231 at 53].

"The Double Jeopardy Clause of the Fifth Amendment prohibits multiple punishments for the same criminal act or transaction." *United States v. Graham*, 275 F.3d 490, 519–20 (6th Cir. 2001). "In this Circuit, it is well-settled that because of the Double Jeopardy Clause's prohibition on multiple punishments a court may not impose more than one sentence upon a defendant for violations of section 924(c) which relate to but one predicate offense." *Id.* at 519 (brackets omitted) (quoting *United States v. Sims,* 975 F.2d 1225, 1233 (6th Cir. 1992)). However, the Sixth Circuit "ha[s] upheld convictions and sentences under 18 U.S.C. § 924(c)(1) so long as such convictions are based on separate predicate acts." *Id.* at 520. Thus, "[i]t is now firmly established that the imposition of separate consecutive sentences for multiple § 924(c) violations occurring during the same criminal episode are lawful." *United States v. Burnette,* 170 F.3d 567, 572 (6th Cir. 1999).

"[W]hen predicate offenses consist of non-identical conduct and are not committed simultaneously, these offenses are separate predicate acts that can support multiple convictions under 18 U.S.C. § 924(c)." *United States v. Angeles,* 484 F. App'x 27, 34 (6th Cir. 2012) (affirming two § 924(c) convictions based upon predicate offenses of kidnapping and carjacking). "[W]hile a temporal gap between predicate offenses may bolster a showing that predicate acts are separate, predicate offenses need not occur at different times in order to support multiple § 924(c) convictions. Rather, the fact that each offense requires proof of facts not required by the other offense appears to be sufficient to show that the predicate acts are separate." *Id.* at 34–35 (internal citation omitted).

13

However, "[a] conspiracy count and a substantive offense that comprises an overt act in furtherance of the conspiracy can both support a § 924(c) conviction." *United States v. Kincaid*, No. 3:10-CR-160, 2013 WL 1501988, at *12 (E.D. Tenn. Feb. 13, 2013), *report and recommendation adopted by*, 2013 WL 1501983 (E.D. Tenn. Apr. 12, 2013). In *Kincaid*, the applicable superseding indictment alleged in Count Two that "from in or about October 2009 through on or about December 14, 2010," the defendant possessed firearms in furtherance of a drug conspiracy alleged in Count One. *Id.* at *8. Additionally, Count Four alleged that the defendant, along with a codefendant, possessed oxycodone and morphine with the intent to distribute in violation of 18 U.S.C. § 841. *Id.* The defendant was also charged in Count Five that "on or about December 14, 2020," the defendant possessed firearms in furtherance of the drug trafficking crime alleged in Count Four. *Id.* However, Magistrate Judge Guyton found that:

> Based on the allegations in the Superseding Indictment the Court cannot find as a matter of law that Counts One and Four may not support separate § 924(c) convictions. These two counts do not allege identical conduct, but the Manner and Means section of Count One reveals that it alleges additional and different types of conduct than that alleged in Count Four. Although the allegations in Count Four occurred on the last day of the alleged conspiracy, the conspiracy went on much longer. Finally, Count One requires proof of a criminal agreement, which Count Four does not. Based upon the similarity of facts in *Gibson* discussed above, the Court finds that Defendant Randy Kincaid's charges in Count Two and Count Five are not multiplicitous.

*Id.* at *12.

Here, similar to *Kincaid*, the Court finds that Counts Two and Seven are based on separate predicate offenses that consist of non-identical conduct and were not committed simultaneously. The Sixth Circuit has noted that "Congress intended section 924(c) to serve as an enhancement to other drug trafficking crimes whether they be conspiracies or substantive offenses." *United States v. Gibbons*, 994 F.2d 299, 302 (6th Cir. 1993) (holding "[w]here statutory intent clearly indicates that Congress authorized multiple punishments based on committing a crime in a particular

14

Case 3:19-cr-00151-TAV-DCP   Document 322   Filed 12/21/20   Page 14 of 16
PageID #: 2618

manner, here using a firearm, the resulting sentences do not violate the double jeopardy clause"). In *Gibbons*, the Sixth Circuit affirmed the defendant's convictions for a section 924(c) charge that corresponded to a charge of possession with intent to distribute, as well as a section 924(c) "firearm conspiracy charge" that corresponded to a conspiracy to distribute charge. *Id.*; *see also Kincaid*, 2013 WL 1501988 at *12.

In the present case, Count Two charges broad and extensive conduct from July 15, 2018 through September 6, 2019 and is alleged to be in furtherance of the overarching conspiracy set forth in Count One. However, Count Seven is based upon the distribution of methamphetamine charge in Count Six, which was alleged to have occurred in or around the end of July 2019. Additionally, the conspiracy count alleged in Count One requires the proof of a criminal agreement, which the distribution charge in Count Six does not. Again, the Court notes that "[a] conspiracy count and a substantive offense that comprises an overt act in furtherance of the conspiracy can both support a § 924(c) conviction." *Id.*

Therefore, the Court finds that the charges against Defendant in Count Two and Count Seven are not multiplicitous. Accordingly, the Court recommends that Defendant's Motion to Dismiss [Doc. 193] be denied. However, the Court notes that the denial of this motion does not preclude Defendant from raising the issue again at the close of the proof at trial, in a post-verdict motion to vacate his conviction, or at sentencing, depending on the proof for Counts Two and Seven. *See United States v. Throneburg*, 921 F.2d 654, 656–57 (6th Cir. 1990) (finding election between multiplicitous counts prior to trial is appropriate when "the mere making of the charges would prejudice the defendant with the jury"); *see also United States v. McCafferty,* 482 F. App'x 117, 126 (6th Cir. 2012) ("[T]he proper remedy for multiplicitous counts may include allowing the jury to consider all counts that are reasonably supported by the evidence and addressing any

15

multiple-punishment issues at sentencing by merging overlapping convictions.") (citing *Ball v. United States,* 470 U.S. 856, 864–65 (1985)).

III. **CONCLUSION**

Accordingly, the undersigned respectfully **RECOMMENDS**[3] that that Defendant's Motion to Dismiss Superseding Indictment [**Doc. 193**] be **DENIED**.

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).